VILLANTI, Judge.
The Mother appeals a final order adjudicating her child dependent.[1] The Department of Children and Family Services and the Guardian ad Litem Program concede that the trial court erred in its order changing the case plan goal from reunification to adoption, but they argue that the issue is moot because the Mother subsequently surrendered her parental rights to the child. We find that the issue is not moot and hold that the trial court abused its discretion by: (1) changing sua sponte the Department’s initial case plan goal from reunification (concurrent with adoption through termination of parental rights) to adoption through termination of parental rights (concurrent with permanent guardianship) and ordering the Department to file a petition for termination of parental rights, (2) changing sua sponte the goal of its dependency order from reunification to adoption, and (3) failing to hold a new arraignment and obtaining the Mother’s knowing and voluntary consent to the dependency petition or failing to hold an adjudicatory hearing. Accordingly, we reverse.
On November 1, 2007, the Department sheltered the nine-year-old child. On November 28, 2007, the Department filed a *476 Petition for Adjudication of Dependency, which stated that the Mother was incarcerated. The Mother, represented by counsel, appeared at the arraignment on January 15, 2008. The trial court, which was aware of the Mother’s incarceration, explained to her that the dependency petition alleged abandonment, “which is just a legal term for saying you haven’t been around taking care of [the child].” The trial court then told the Mother that “[t]he Court is going to give you a case plan and your attorney acknowledged you wanted to start working on that” and “if you don’t do that case plan and finish the sort of things that are related to this case, then your parental rights to [the child] could be terminated altogether.” (Emphasis supplied.) Following this dialogue, the Mother consented to the dependency petition. The trial court specifically approved the Mother’s request to waive her appearance at the disposition hearing so that she would not miss gain time. The request to waive the Mother’s appearance at the disposition hearing was based upon representations that the goal of the case plan was reunification of the Mother and child. Thereafter, the trial court adjudicated the child dependent based upon the Mother’s “knowing, volüntary, and intelligent choice to — [enter] into this consent to resolve this case here today.” A disposition hearing was set for February 1, 2008.
Consistent with the discussions at the arraignment hearing, on January 24, 2008, the Department filed an initial case plan with a stated goal of reunification of the Mother and the child. The Mother reviewed that case plan before the disposition hearing, and therefore, she did not appear at the hearing. More important, the expiration date on the case plan was October 5, 2008. However, at the February 1, 2008, disposition hearing, the trial court questioned why the Mother had received a reunification case plan when she would be incarcerated until 2009,[2] a date after her case plan’s expiration date. The Department’s attorney responded: “Judge ... she’s not going to be — her incarceration is not significant enough for her — to proceed with TPR.” Nevertheless, the court sua sponte stated it would not allow the Mother a reunification plan because “[fit’s just impossible[.]” The court then changed the goal from reunification to adoption, concurrent with permanent guardianship. The trial court subsequently denied the Mother’s motion for rehearing and ordered the Department to file a petition for termination of parental rights. This appeal ensued.
As an initial matter, the Department and the Guardian concede that the trial court improperly changed the stated permanency goal at the disposition hearing. However, they argue that the issue is moot and that this appeal should be dismissed because the Mother subsequently signed surrenders of her parental rights to the child on August 7, 2008. We reject this contention because, as acknowledged by the parties, the Mother filed a motion to withdraw her surrenders of the child. Although her motion to withdraw the surrenders was orally denied, the trial court has not issued a written order reflecting that denial. Hence, the Mother’s time to appeal the order denying her motion to withdraw the surrenders has not expired. See Fla. RApp. P. 9.020(h) (stating that an “order is rendered when a signed, written order is filed with the clerk of the lower tribunal”); Fla. RApp. P. 9.110(b) (stating that the appellate court’s jurisdiction is *477 invoked by filing a notice of appeal within thirty days of rendition of the order appealed). The Mother has indicated that she may appeal the denial of her motion to withdraw the surrenders once she receives a written order. If that were the case, and if her consent to surrender the child is reversed on appeal, her current appeal would be relevant. Therefore, this issue is not moot, and we consider the appeal on the merits.
Section 39.621(2)(b), Florida Statutes (2007), allows adoption as a permanency goal option only “if a petition for termination of parental rights has been or will be filed.” Here, the Department and the Guardian both concede error because a petition for termination of the Mother’s parental rights was not filed. In fact, the trial court chose to second guess the Department’s stated reunification goal, even though the Department stated at the disposition hearing that the Mother’s incarceration was not significant enough to proceed with termination of parental rights. This clearly indicated that the Department had no intention of filing a termination petition. Based on these facts, the trial court abused its discretion by changing the goal from reunification to adoption through termination of parental rights and by ordering the Department to file a petition to terminate the Mother’s parental rights.
Finally, we must point out that the trial court’s actions raised serious due process issues. Florida Rule of Juvenile Procedure 8.325(c) requires the trial court to “determine that any ... consent to a finding of dependency is made voluntarily and with a full understanding of the nature of the allegations and the possible consequences of the ... consent.” In this case, it is clear from the record on appeal that the Mother’s consent to the dependency adjudication did not include consent to a case plan with a goal of adoption through the termination of her parental rights. At the arraignment hearing, the parties discussed reunification; adoption was never discussed with the Mother. The trial court told the Mother that she would be receiving a case plan and that her parental rights could be terminated if she did not comply with her case plan. Based on those representations, the Mother consented to the dependency adjudication without an evidentiary hearing, and she waived her appearance at the disposition hearing. The trial court’s unilateral decision at the subsequent disposition hearing to change the case plan goal to adoption through termination of parental rights meant that the Mother’s consent to the dependency adjudication was not knowing and voluntary. At that point, without the Mother’s knowing and voluntary consent, the trial court could adjudicate the child dependent only after an adjudicatory hearing pursuant to section 39.507. See § 39.506(2). Yet, an adjudicatory hearing was not held in this case. Thus, the trial court erred under the facts of this case in addressing a substantive issue without either obtaining the Mother’s knowing and voluntary consent at a new arraignment or holding an adjudicatory hearing.
Reversed and remanded for further proceedings consistent with this opinion.
WALLACE, J., and GALLEN, THOMAS M., Associate Senior Judge, Concur.

. Because both the Mother’s and the child’s initials are ’’T.F.” we will refer to them as "the Mother” and "the child” throughout this-opinion.

. At the arraignment hearing, the Mother stated that she would be incarcerated until March 2009. The Predisposition Study filed with the court on January 25, 2008, stated that the Mother would be incarcerated until May 2009.